I'd like to reserve five minutes of my time for rebuttal. You should state your name for the record. Melanie Parto, appearing on behalf of the appellant's plaintiffs. All right, you may proceed. Your Honors, the argument that Ms. Morales could use this case to invalidate her criminal conviction is patently false, and there are three reasons why this Court should reverse Judge Reel's dismissal of this case and remand granting plaintiffs' leave to amend. The first reason is that according to Deputy Winters' testimony during the civil case, he was looking into the side passenger window of the truck at the time he fired and killed Mr. Rose. Based on those facts, any assault with a deadly weapon that was taking place had culminated, and the factual basis for plaintiff's excessive force claim is different than the factual basis for any assault with a deadly weapon claim. The second reason is that the jury in Ms. Morales' case never found that Deputy Winter was in the lawful performance of his duties either at the time he used excessive force or during the entirety of the incident, which is the claim made in the appellee's answering brief. And the third reason is that Heck v. Humphrey does not preclude a Section 1983 plaintiff's claims based on the criminal conviction of another person. Well, it seems that this really boils down to whether there's a Heck bar in this particular case. And obviously in this situation, the decedent can never be tried. And it seems to me that they could not have convicted, when you look at the jury instructions, they could not have convicted Mrs. Morales of the charges if they had not found that the officer was in the lawful performance and necessarily found that there was not excessive force. So the issue really is there is not a specific case that says that you can use another person's conviction to Heck bar someone. However, clearly if your clients are allowed to proceed, it does affect the underlying conviction of Ms. Morales. I mean, the jury would have had to have found that there was not excessive force and he was in the lawful performance. So that's really, I think that's the focus here. I'll address that initially then, Your Honor. With respect to the assault with a deadly weapon claim, well, let me back up just momentarily. Taking into account all of the evidence that the jury was given during Ms. Morales' criminal trial, including the information presented by the prosecution, the jury instructions, the closing argument, and the verdict form which informs us as to the basis for the jury's decision, there are only four criminal convictions that has, as an element, have the fact that the officers would have needed to be in lawful performance of their duties at the time the crime was committed. The first is the assault with a deadly weapon counts, and those can be divided into two subsections. The first counts three and four, according to the people's information and the verdict form, deal specifically only with Schultz and Ma. And that was a violent situation that happened before the shooting. So a jury finding that Schultz and Ma were in the lawful performance of their duties during that resisting or assault is completely different than a finding that Deputy Winter was in the lawful performance of his duties. With respect to the assault with a deadly weapon against Deputy Winter, the people provided information during their closing argument, as did the defense, that the assault with a deadly weapon was supposed to take place at the time the truck was moving toward Deputy Winter. So the factual basis for the conviction of Ms. Morales for assault with a deadly weapon was the time when the truck was moving toward Deputy Winter. The jury therefore found that Deputy Winter was in the lawful performance of his duties at the time the truck was moving toward Deputy Winter. However, Deputy Winter has testified that right before he shot, he had already laterally moved to the side of the car, was looking into the car through the side passenger window, and fired in through the passenger window. And we know that trucks can't move sideways. Well, I guess what you seem to be saying, where in the record does it support your assertion, and I think in your brief, that he drew his gun after the truck was stopped and at a time when he no longer thought he was in danger? Because if you look at that, I mean, we have testimony, we have deposition testimony, we have that it's contrary to what he said. He said he's still in fear of his life. So where in the record can you point to your assertion? I don't find anywhere in the record. The assertion with respect to Deputy Winter's testimony or the factual basis for the conviction? Well, the assertion in your brief is that Deputy Winter drew his gun after the truck was stopped and at a time that he no longer thought that he was in danger. Where is that in the record supported? Give me a specific site in the record. Your Honor, I do have those citations for you, and with just a moment I'll find them. Well, if you don't have them right at your fingertips. If I can direct Your Honor's attention to the excerpts of record, which is volume 2. Which excerpt of record? The excerpts of the record, volume 2, and the first citation would be to page 75. So what does that say? It says, the question is, where was he standing while firing? He says, I don't recall. Then the next question is, just prior to firing, do you recall looking at the driver through the open passenger window? Answer, just prior to firing. Question, yes. So where does that say the truck was stopped and he was no longer in danger? There are several. There are several. Your Honor, the inference is that if he admits that he's standing on the side, to the side of the car, and he can look in through the passenger side window, and in fact fired through the passenger side window, that he couldn't simultaneously also have been standing behind the truck with the truck reversing back him. Isn't the truck mobile? Can it move? Can he change directions? Of course. But trucks don't move sideways. And at the time he fired, his testimony is that he was standing at the side of the truck. And a procedural point, Your Honors. The procedural posture of this case is at the motion-to-dismiss stage. All plaintiffs ought to have an opportunity to do is to plead a set of facts that, if accepted, would not invalidate the factual conviction or the factual basis for the convictions. Now, whether or not Deputy Winter was actually standing at the side or behind the truck, and whether or not Heck v. Humphrey would bar the claims based on that evidence, if evidence does exist that, in fact, the truck was moving forward toward him at the time he fired, is a question that can be determined at the summary judgment stage, and which is most properly determined at the summary judgment stage. But at this stage, because there is evidence to support the pleading and the allegation that there's a different factual basis for the excessive force claim than there is for the assault with a deadly weapon claim, it's in the interest of justice that, and further to the remedial purposes of the Civil Rights Act, that plaintiffs be at least afforded an opportunity at this point to amend their complaint. So would you concede that Morales would have a Heck bar? Yes. All right. And so your issue is that he somehow is in a different posture than she is? He is, and I would refer Your Honor's attention to this Court's decision in Cunningham v. Gates, not Cunningham v. Gates I, but Cunningham v. Gates II. That citation is 312 F. 3D 1148, and the decision was in 2002. The facts of that case are somewhat analogous to this case, in the sense that there were two occupants of the car, one of whom was shot, and he died. The surviving individual was convicted of resisting arrest and assault on a peace officer. But wasn't one charged with a provocative act, theory of murder? Yes, it was. And so that's considerably different than Morales, who has the exact same charges that your client's, that he would have been charged with had he survived, correct? It is different, Your Honor, yes. But that distinction is not what's relevant for the purposes of our consideration here today. What's important about the decision in Cunningham II is that the Court held that the survivors or the successors in interest of the person who died was not barred by heck to bring survival 1983 claims or 14th Amendment claims for violations of Solly's constitutional rights. You're at five minutes. If you want to reserve her rebuttal. Okay. I'll just briefly conclude, if that's all right, and then I will reserve the remainder of my time for a letter. This Court's holding in Cunningham II says specifically, one, that Solly, the decedent's claims, were not precluded by heck. This Court's holding goes on to say that if any preclusion based on collateral estoppel or some other reason would exist to preclude the successors in interest to Solly from seeking remedies under Section 1983, that these would have to be pursuant to California law under a collateral estoppel analysis. And this is the test that this Court proffered in Cunningham II. One, if the issues decided at the plaintiff's trial or the criminal defendant's trial were identical to the issues in the 1983 claims. Two, if the criminal defendant's trial resulted in a judgment on the merits. And three, if the successors in interest to the decedent were in privity with the criminal defendant. And this Court found that in that case, there was no privity because there's a three-factor test to find privity, one being the identity and community of interest with the convicted party. Two, that there be adequate representation for the represented party in the 1983 action. And three, that there be privity between the parties. And this Court found that there was no privity between the parents of the individual who was killed and the criminal defendant. And with that, Your Honors, if there are no further questions, I'll reserve the remainder of my time for rebuttal. That's fine. You have three and a half minutes left, basically. Good morning, Your Honors. Good morning. May I please the Court, Jen Choi, on behalf of the defendants and the attorneys. The first point I would like to address is a brief point that Judge Callahan raised, which I think is very salient. Had Mr. Rose, the decedent, actually survived this incident and been charged and convicted in the same manner that Ms. Morales was, all of his claims would be barred by heck, as Plaintiff's Counsel just conceded. The fact that he died does not change the legal complexion of this analysis. Well, it does make it, this is dicier than just, if it were Ms. Morales sitting here, it, I mean, I don't know that Morales is, I never know what lawyers are going to argue. It's possible if Ms. Morales were suing for excessive force, she might try to say she wasn't heck barred. But her argument would not, I mean, I think that would be a pretty easy decision. It would be for me, at least. Here, however, we're talking about Mr. Rose, who is deceased, would never, he can never be charged. So the issue is, you know, are we going to use Ms. Morales' conviction to heck bar his survivors in terms of bringing this. Now, obviously, in Cunningham, there were different, that was charged with provocative act murder, and so the facts were not exactly the same. And your argument, obviously, is that Mr. Rose would have been tried with Ms. Morales. They have, they are exactly the same issues, and therefore, on an aiding and abetting theory, that you can't really separate them out. But let's say if Mr. Rose had survived, assuming that he had survived, and maybe he had defense counsel that allowed him to sever out, so he had a separate trial, and he were found not guilty, she was found guilty. I mean, we never know what juries are going to exactly do. Would he be heck barred at that point, based on her trial, even though he was found not guilty? I don't think he would be. Well, if he, in fact, went to trial and was acquitted by a jury, and if Ms. Morales had been convicted under the same circumstances, that's an interesting question, which I actually never thought of. And off the top of my head, Your Honor, I would say he would have a stronger argument than the plaintiffs do right now as to whether or not heck applies to him. But that's not the situation here. Well, so if you want to heck bar someone and it's not their conviction, how narrowly do we define this? Because obviously, I think you're conceding that if we get into the area that, because we know that anyone that's done criminal law, we know that they're not always tried together for a number of reasons. And so if he had been, and juries don't always reach consistent results, so we probably wouldn't heck bar someone if they had been acquitted, even though a co-defendant like Ms. Morales, who appears to be in very similar, you know, on aiding and abetting, they were together the whole time. Well, I think the fundamental difference between the hypothetical and this situation, this case, is that there is no criminal acquittal in this case. And what we're asking the court to do is what the district court did below, is apply the principles of heck to this specific situation, which is the plaintiff's Section 1983 claim boils down to a contention that the use of force used during this incident prior to the detention of either Morales or the deceit was unconstitutional and violated the Fourth Amendment and was excessive. Well, the criminal jury in that case was given that very task. The criminal jury could not have convicted Morales based on the jury instructions had they found that any of the force used by any of the deputies or officers on the scene had been unreasonable because they would not have been lawfully performing their duties. Well, counsel, let me ask you something. That sort of raises a different issue, a little different issue in my mind. Why would a determination that the officer used improperly, used deadly force against Rose necessarily mean or necessarily affect Morales' conviction? In this case, what we have is the officer said, look, this thing was assaulting me. Truck was coming at me, wasn't coming at me. There's this big fight about, well, had it paused momentarily as it shifted gears or did it pause momentarily? But the point is what the officer says, I shot to hit the driver. That's what I did. Let's assume that's excessive force as to the driver. So he shot, the driver's assaulting him with a car. She's part of it. He shoots to hit the driver and he does hit the driver and the driver dies. Now, why would finding that there was excessive force used in his attempt to kill the driver show us that therefore Morales couldn't be prosecuted because the excessive force was used against the driver? Why? I don't quite understand why that would necessarily follow. I think that would imply, if the plaintiffs are allowed to proceed in this case and prevail on that Section 1983 theory that the force used against Rose was excessive, I believe that would have that impact on Morales' conviction because Morales was prosecuted and convicted on an aiding and abetting theory. And I thought an assault. Suppose I come driving like a madman at an officer trying to run him down, but I miss and everything stops. Can I be charged with ADW as the officer? I thought I could be. I don't have to hit him, do I? I think that's correct, Your Honor. Okay, so, Ms. Morales is in the car as they attack the officer with this car and now it stops dead. Okay? It stops. Nothing else happens, it just stops. Rose was on drugs and he has a heart attack. I don't care how he's out of the scene. It stops at that point. Okay? She can still be prosecuted for ADW, can't she? Aiding and abetting the assault on the officer. Can't she not? Yes. Now, it stopped. And now the officer improperly guns down Rose. How does that affect her conviction? I think those facts are not in the record, Your Honor. That's what they argue. They say, well, the officer was no longer in danger. Sounds to me, even though there was an ADW against the officer, no longer in danger at the time he decided to gun down Rose. Kind of what they're saying. So? Why does that mean that Morales gets off on the ADW? Well, I can only go back to what the facts of the underlying criminal case were and how the jury was instructed, Your Honor. And admittedly, we are at the pleading stage, but at the pleading stage, the court correctly considered what the jury was instructed about. And basic facts of the incident were that the force that was used that led to the arrest and detention of Morales and Rose all occurred before anyone was handcuffed, anyone was pulled out of the car, things of that nature. I'm not talking about that. I'm talking about car stop. The guy says, I surrender. He's not handcuffed yet. Whatever. I mean, I don't think that's not really the point I'm making. It may be this excessive force to start shooting at this car, but they weren't just shooting randomly at the car. They say they were shooting at him, not at her. I understand that is the allegation that they're trying to inject into this complaint. Your Honor, it's not in the First Amendment complaint, which was the operative complaint. But Winters said that. Winters said, I was shooting at the driver. My only response to that, Your Honor, is that the jury was asked specifically, did any of the officers use any unreasonable or excessive force? If they did, Morales could not have been convicted for any of these crimes. And if this case proceeds to trial, and if the plaintiff happens to prevail, obviously a different standard of proof in a civil case versus a criminal case, there's nothing stopping Mr. Morales from saying, hey, I was involved in that same incident. This civil jury just found that Deputy Winter used unreasonable force. And the only reason I was convicted was that the criminal jury found that no unreasonable force had been used. And it's that scenario of potentially inconsistent results, especially when you have an outstanding criminal judgment that has not been successfully invalidated or challenged, whether by habeas corpus or any other measure, that the HEC principles apply. Excessive force against whom? Against both. Well, in this case it would be both. Well, there you have it. The jury could easily find there was no excessive force directed at her. None. Zero. Well, the jury was not, the jury was asked, but was given a theory of it. I don't want to repeat myself, Your Honor, but the theory was aiding and abetting. And the plaintiff, Morales, was charged under that theory. And she could only have been convicted if the jury believed that Rose had committed these crimes. And if Rose had, excuse me, if Rose had committed those crimes, and if the jury had believed that excessive force had been used against Rose, and since they're in the same car, I think it's fair to say against Rose and Morales, the convictions would never have occurred. I understand your point. Thank you. Court does not have any other questions. I'll submit, Your Honor. Thank you. Your Honor, there's three brief points on rebuttal, and I probably won't get to all of them. But it seems as though the main issue raised by the appellees is, again, the argument that Ms. Morales is going to be able to use the decision in this civil case  to invalidate her criminal convictions. But as Your Honors pointed out, simply because there's a finding of liability against Deputy Winter for excessive force against Mr. Rose doesn't necessarily mean that Ms. Morales didn't commit assault with a deadly weapon by aiding and abetting with the truck against Deputy Winter, because the facts show that that could have happened at a different point in time than the time he used excessive force. She still could have been convicted of the Penal Code Section 69 claim for resisting because that claim goes specifically against Shultz and Maw and doesn't have anything to do with whether or not Deputy Winter was in the lawful performance of his duties when he used excessive force against Mr. Rose. And then, of course, she still could have been convicted of evading or theft of the truck that she was still driving or sitting as a passenger in at the time Deputy Winter used excessive force against Mr. Rose because neither of those two crimes contain an element that required the jury to make a finding that at the time those two crimes were taking place, that Deputy Winter was in the lawful performance of his duties when he shot and killed Mr. Rose. The second point that I'd like to make on rebuttal is I would like to point out that there is absolutely nothing in the record, nothing in the verdict forms, and nothing in any of the jury instructions that tell us that the jury made any kind of finding that Deputy Winter did not use excessive force against Mr. Rose. We know that the jury had to concede that Deputy Winter was not in the lawful performance of his duties at the time the assault with a deadly weapon took place. But plaintiff's position is, as we would like an opportunity to plead, if granted leave to amend, that the use of excessive force took place subsequent to the assault with a deadly weapon, which is completely in line with all of this Court's rulings and in line with the Court's holding in Heck v. Humphrey. And finally, although we didn't have too much of an opportunity to discuss it further, had Mr. Rose been convicted, the question is... So would it be your position if there's a co-defendant that they never could be in privity? Are you just saying in your case they're not? I'll answer both questions. We are not saying that there could never be a situation where the co-defendants are in privity. There is one case that's not included in the, I think, cited in either of the briefs, but it is a California state case. I believe it's SUSAG, and I'm not quite sure what the defendant's name is. But in that case, it was a California Court of Appeals decision. They found that two co-defendants were in privity, but the reason why they were in privity was because they were married. And this case is different. We do believe that in this case there is no privity because the analysis would go exactly the way that the analysis went in this Court's ruling in Cunningham 2, where although maybe the first two factors for privity would have been satisfied, the third absolutely would not be satisfied. If there are any other questions from the Court? There do not appear to be. Thank you very much. Thank you. This matter will stand submitted. Next case on calendar is Sandburg v. City of Torrance.
judges: Erickson, Fernandez, Callahan